STATE of Missouri, Respondent,

v.

R.V. PRIDE, Appellant.

R.V. PRIDE, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 64179, 65469.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 13, 1994.

Talat Bashir, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

A jury convicted defendant, R.V. Pride, of second-degree burglary, a violation of § 569.170 RSMo 1986. The trial court sentenced him as a prior and persistent offender to ten years imprisonment.

Pride appeals in an effort to secure a new trial. He does not challenge the sufficiency of the evidence. The evidence, viewed in the light most favorable to the verdict, would support finding the following facts. On September 25, 1992, Officer Christopher Kornberger responded to an alarm at 3407 Lafayette, a building under renovation. Officer Kornberger looked through an open window area and saw defendant kneeling down inside the building. Defendant was kneeling next to a box of copper wire. He was removing the wire from the box.

Defendant saw Officer Kornberger and disappeared from view. Officer Kornberger entered the building through the window opening and searched the area where he had seen defendant. Since he did not see defendant, he radioed for a canine unit. Immediately thereafter he heard defendant say, "Here I am." Defendant then came out from under a stairwell. Officer Kornberger handcuffed defendant and advised him of his Miranda rights. Defendant said he understood his rights; there was no sense in lying about it. He was in the building stealing copper wire.

Based on this evidence, the jury found defendant guilty of second-degree burglary. Defendant timely filed a Rule 29.15 motion and a first-amended motion. The motion court denied his motion without an evidentiary hearing. Defendant presents three points on direct appeal only.

■ Defendant's first point asserts error based on the equal protection rights considered in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). He contends the trial court erred in overruling his *Batson* motion because the state's explanations for striking three black venirepersons were pretextual. He contends the state's explanations were unrelated to the case being tried and were insufficient when compared with similarly situated white venirepersons who were not struck.

■ Once a party has established a prima facie case under *Batson,* the other party must give race-neutral reasons for the challenged peremptory strikes. *State v. Parker,* 836 S.W.2d 930, 934 (Mo. banc 1992), *cert. denied,* — U.S. —, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992). To be sufficient the explanation need only be race-neutral, reasonably specific and clear, and related to the particular case to be tried. *Id.*

■ If a party offers a sufficient race-neutral explanation for the challenge, the prima facie case is rebutted. The *Batson* inquiry then involves a third step, which requires the court to determine whether the defendant has established purposeful discrimination. To succeed, the defendant must show that the state's proffered reasons are merely pretextual and that the true motivation for the strike was racial. *Id.*

■ Defendant made a timely *Batson* motion regarding three black venirepersons whom the state struck. They were George Taylor, Timolin McField and Wynile Fletcher. The state explained it struck Taylor because he was wearing sunglasses, which was thought to "lend an air of intimidation"; McField because she was disgruntled with police officers and the way they handled a stolen car matter the previous month, and the state's case depended largely on testimony of an eyewitness who was a police officer; and Fletcher because he was previously arrested for conspiracy to commit a robbery. After each explanation defendant stated that the state's reasons were pretextual. However, defendant did nothing more to demonstrate pretext. He offered no grounds for his rejection of the state's reasons. He never connected the explanations with any similarly situated white venirepersons who were not struck by the state or to any circumstances that tended to show that racial discrimination had occurred. Where a defendant fails to lay a foundation for findings of pretext on the state's explanations in the trial court, the defendant may not challenge the state's explanations on appeal. *State v. Plummer,* 860 S.W.2d 340 (Mo.App.E.D. 1993). Defendant has failed to sustain his burden of proof and presents nothing for our review. *Id.* Point denied.

■ Defendant's second point is the trial court erred in giving MAI–CR 3d 312.10, the "hammer" instruction, and in overruling his objection to this instruction. Defendant contends the instruction was improper because it was given before the jury had extensively deliberated the case, and it coerced a verdict of guilty.

After the jury deliberated for about an hour and a half, it submitted a note to the trial court. The note said, "How long do you want us to stay here to try to become unanimous? We're having big problems, [signed, jury foreperson]." The trial court advised the parties it would give the "hammer" instruction. Defendant opined the jury was deadlocked, but he made an objection for the

record. The trial court submitted the additional instruction. About fifty minutes later the jury returned to the courtroom with a guilty verdict.

■■ The length of time a jury is allowed to deliberate and the decision whether to read MAI–CR3d 312.10 are matters within the discretion of the trial court. *State v. Parson*, 815 S.W.2d 106, 107 (Mo.App.1991). The notes accompanying the instruction provide that it may be given "when the court deems it appropriate and when the length of deliberation *or communication from the jury* causes the Court to believe that the jury may be deadlocked." MAI–CR3d 312.10, Notes on Use 2. [Our emphasis]. In order to establish an abuse of discretion it must be shown that, based on the record of what was said and done at the time of trial, the verdict of the jury was coerced. *Parson*, 815 S.W.2d at 107.

The communication was sufficient to support a finding of deadlock. The note from the jury indicated the jurors were deadlocked. Further, the trial court did not know the jury's numerical split or whether the jury favored acquittal or conviction. Except for the lapse of time between the giving of the instruction and the receipt of the verdict there are no available facts to support a conclusion of coercion. We find no abuse of discretion in the trial court's giving MAI–CR 3d 312.10 and no prejudice. Point denied.

Defendant's final point concerns submission of the reasonable doubt instruction, MAI–CR3d 302.04. This matter has been consistently rejected on the authority of *State v. Griffin*, 848 S.W.2d 464 (Mo. banc 1993). Point denied.

We affirm.

AHRENS, P.J., and SIMON, J., concur.